UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATILOCK, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>PAYMAN POULADDEJ,<br><br>        Defendant. | Case No. 20-cv-01186-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Pending before the Court is Defendant Payman Pouladdej's motion to dismiss. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

**I.   BACKGROUND**[1]

This case involves a dispute between a start-up company and its investor. Plaintiff Matilock, Inc. alleges that Plaintiff is a start-up company "focused on providing solutions for user verification" for businesses such as banking, cryptocurrency, and insurance. *See* Dkt. No. 12 ("FAC") at ¶ 11. In January 2017, Defendant met with Plaintiff's Chief Executive Officer, Filip Victor, and decided to invest in the company. *See id.* at ¶¶ 12–14. Defendant purchased a convertible promissory note for $150,000 in February 2017, which would allow Defendant to obtain an automatic equity interest in Matilock following "a qualified financing event." *See id.* at

---

[1] Both parties rely on information outside the pleadings. *See* Dkt. No. 16 at 6–7, & n.6; Dkt. No. 23-2. To the extent the parties request judicial notice of additional documents or "background" information, the Court **DENIES AS MOOT** the requests for judicial notice. The Court did not rely on these materials in reaching its decision, nor does it find doing so would be appropriate for purposes of this motion to dismiss.

¶ 14.  Defendant offered to contribute additional funds, and from October 2018 to July 2019, he made several "stipend payments" to the company, totaling $800,000.  *Id.* at ¶ 16.  In June 2019, while Defendant continued to make these stipend payments, Plaintiff also reached an agreement with Accomplice Management, LLC, a venture capital firm, regarding "seed funding" to further support the company.  *See id.* at ¶ 20.

In July 2019, Defendant introduced Plaintiff to a "business associate," Jon Ezrine.  *See id.* at ¶ 21.  Mr. Ezrine met with Matilock's CEO, and proposed joining the company as its President.  *Id.* at  22.  In the course of these discussions, Plaintiff alleges that Mr. Ezrine "receive[d] substantial confidential and proprietary information about Matilock," which he subsequently shared with Defendant.  *See id.* at ¶¶ 22, 55.  Plaintiff alleges that the next month, Defendant "ma[de] multiple negative and harmful statements about Matilock and its founder Filip Victor" to an Accomplice principal.  *See id.* at ¶¶ 23, 47.  Plaintiff states "[o]n information and belief" that he did so "out of personal animus towards Matilock and its founder Mr. Victor and to further his investment in Matilock's competitors."  *See id.* at ¶¶ 26, 48.  And as a result of Defendant's statements, Accomplice abandoned its agreement to provide seed funding.  *Id.* at ¶¶ 24, 40, 49, 51, 54.

Plaintiff further alleges "[o]n information and belief" that Defendant, in turn, has used confidential information about Matilock that he obtained from Mr. Ezrine, and without Plaintiff's authorization, to support Defendant's own business ventures with Plaintiff's competitors.  *See id.* at ¶ 55.  Moreover, Plaintiff alleges that Defendant has "now" requested repayment of all the stipend payments he made to Matilock, despite the fact that the parties did not agree to any repayment terms.  *See id.* at ¶¶ 18–19, 27.  Plaintiff suggests "[o]n information and belief" that Defendant has done so to threaten the company as he has since "become an active investor in Matilock's competitor companies."  *See id.* at ¶ 29.

Based on the allegations, Plaintiff alleges three causes of action against Defendant: (1) intentional interference with contractual relations; (2) violations of California's Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200, *et seq.*; and (3) declaratory judgment that there is no enforceable contract governing the $800,000 stipend payments.  *See id.* at ¶¶ 30–58.  In

2

1    addition to an award of monetary damages and attorneys' fees, Plaintiff also seeks punitive

2    damages. *See id.*, "Prayer for Relief" at A–G.

## II.   LEGAL STANDARD

A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 9(b), in contrast, imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Yet even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127

1  (9th Cir. 2000) (en banc) (quotation omitted).

## III.   DISCUSSION

Defendant challenges all three of Plaintiff's causes of action, as well as its request for punitive damages. The Court addresses each in turn.

### A.   Intentional Interference with Contractual Relations

Defendant first contends that Plaintiff's intentional interference claim fails because the FAC does not allege sufficient factual detail, particularly about the alleged statements Defendant made to Accomplice.[2]  *See* Dkt. No. 16 at 10–12. A claim for intentional interference requires that Plaintiff allege: (1) a valid contract between plaintiff and a third party; (2) Defendant's knowledge of this contract; (3) Defendant's intentional acts designed to induce a breach or disrupt the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (Cal. 1990). Plaintiff counters that each element is met, and that the degree of specificity Defendant demands is unnecessary at this stage. *See* Dkt. No. 23 at 7–9. Any further detail, Plaintiff states, including what Defendant actually told Accomplice, "will become clear in discovery when Matilock takes these individuals' depositions." *See* Dkt. 23 at 14.

As an initial matter, Defendant points to both Rule 8(a) and Rule 9(b) when arguing that Plaintiff has filed to meet the pleading standard. *See* Dkt. No. 16 at 10. Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b). However, fraud is not an essential element of an intentional interference with contract claim under California law. *See Quelimane Co. v. Stewart*

---

[2] In his opening brief, Defendant also argues that Plaintiff cannot allege a claim of intentional interference against him because he is not a "stranger" to the agreement between Plaintiff and Accomplice. *See* Dkt. No. 16 at 9–10. Defendant appears to abandon this argument in his reply brief, and in any event, the Court is not persuaded that Defendant's interest in any agreement between Plaintiff and Accomplice insulates Defendant from liability for intentional interference. *See United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1007 (9th Cir. 2014) ("To shield parties with an economic interest in the contract from potential liability would create an undesirable lacuna in the law between the respective domains of tort and contract. A party with an economic interest in a contractual relationship could interfere without risk of facing either tort or contract liability. This result is particularly perverse as it is those parties with some type of economic interest in a contract who[] would have the greatest incentive to interfere with it."); *accord Popescu v. Apple Inc.*, 1 Cal. App. 5th 39, 52–56 (Cal. Ct. App. 2016).

*Title Guar. Co.*, 19 Cal. 4th 26, 55–56 (1998) ("[I]t is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself," so "[i]ntentionally inducing or causing a breach of an existing contract" is "not an element of the tort."). The heightened pleading standard under Rule 9(b) generally does not apply to claims of intentional interference with contracts unless the claim is grounded in allegations of fraudulent conduct. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("[O]nly those allegations . . . which aver fraud are subject to Rule 9(b)'s heightened pleading standard.").

However, here, the FAC offers little detail as to Defendant's intentional acts—including how such acts were "designed to induce a breach or disruption" of the agreement with Accomplice—so as to enable either Defendant or the Court to determine whether they sound in fraud. Plaintiff alleges vaguely that Defendant made "negative and harmful statements" about Plaintiff to Accomplice, and that "[o]n information and belief," he did so to "caus[e] Accomplice to breach its oral promise to provide Matilock with seed funding." *See* FAC at ¶¶ 4, 23, 47–48. Plaintiff does not provide any detail about these "negative and harmful statements," and without such detail, it is not clear if these statements were false so as to sound in fraud, triggering the application of Rule 9(b).

In opposition, Plaintiff argues based on "common sense" that this cause of action does not sound in fraud, and suggests that even "physical coercion, verbal threats regarding future conduct, negative opinion statements, and many other acts, could, under particular circumstances, satisfy the actual legal requirement, which is simply that the defendant engaged in 'intentional acts designed to induce a breach or disruption of the contractual relationship.'" *See* Dkt. No. 23 at 9. Plaintiff's argument, however, merely underscores the dearth of information in its complaint. To survive a Rule 12(b)(6) motion, Plaintiff must still plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The FAC lacks the "factual content" and "particular circumstances" necessary for the Court even to determine which pleading standard applies. The Court finds this insufficient, even at this early stage in the litigation.

The Court further cautions that Plaintiff may not obfuscate the nature of its causes of

action against Defendant, then fill in the necessary details later. Defendant is entitled to "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation omitted). The Court finds it particularly concerning that Plaintiff suggests that what Defendant told Accomplice—and thus the nature of its intentional interference claim—"will become clear in discovery when Matilock takes these individuals' depositions." *See* Dkt. 23 at 14. Under Federal Rule of Civil Procedure 11, attorneys must certify that "the[ir] factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). It is sanctionable conduct for an attorney to fail to make this certification in good faith. *See* Fed. R. Civ. P. 11(c). Moreover, Rule 8 is similarly designed to prevent parties from filing complaints to conduct fishing expeditions in the hope that they may uncover some helpful evidence. *See Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Plaintiff may not sidestep these obligations by asserting that its conclusory allegations are made "on information and belief." Plaintiff must still plead sufficient facts to make a claim plausible as opposed to merely speculative. *See Twombly*, 550 U.S. at 555; *see also Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014) (explaining that the phrase "on information and belief," particularly when qualifying only some and not all phrases, creates the "inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree").

The Court notes that the parties devote significant time to discussing whether falsity is a pleading requirement for an intentional interference claim or is merely an affirmative defense. Defendant states, without any authority, that "simply making a 'negative' comment is insufficient, standing alone, to state a viable intentional interference claim." *See* Dkt. No. 24 at 2. And the Court acknowledges that the California Court of Appeal has stated that "[a] person cannot incur liability for interfering with contractual or economic relations by giving truthful information to a third party." *See Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th 434, 449–50 (Cal. Ct. App. 1993). However, this appears to be discussed as "the defense of justification," and is not

6

discussed as an element of the offense. *Id.* Defendant has not cited, and the Court has not found, a case under California law in which a court dismissed an intentional interference claim for failing to plead falsity.

Defendant's secondary argument, that the First Amendment requires Plaintiff to plead falsity, is similarly unsupported by the cited authority. *See* Dkt. No. 23 at 2–3. Defendant points to the California Supreme Court's opinion in *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042–48 (Cal. 1986). There, the court upheld a general demurrer to a claim for intentional interference with prospective economic advantage where the New York Times had not included a book on its bestseller list. *Id.* The court reasoned that the intentional interference with prospective economic advantage was barred by the First Amendment, and thus upheld the demurrer, because as alleged, these "claims ha[d] as their gravamen the alleged injurious falsehood of a statement" and the plaintiff therefore had to prove that the injurious statements were "of and concerning" the plaintiff. *Id.* at 1042–48. The case simply does not address whether falsity is a requirement to plead a cause of action for intentional interference with contractual relations. Nor does *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964), which the court cited in *Blatty*. There, the Supreme Court held that the First Amendment "prohibit[ed] a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* Defendant does not cite any cases in which *Blatty* or *Sullivan* have been relied on to add falsity as an element to an intentional interference with contractual relations claim.

The Court nevertheless questions the viability of pursuing a cause of action premised on the idea that a defendant's truthful statements interfered with someone's business or contract, and this issue plainly will be relevant at the summary judgment stage if the case makes it that far. *Cf. Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1092 (11th Cir. 1994) (remanding for imposition of Rule 11 sanctions in case where activist truthfully reported to wildlife import company's client that the company had issues complying with government agency directives because "[t]here is of course no liability for interference with a . . . prospective contractual relation on the part of one who merely gives truthful information to another") (citing Restatement (Second)

7

1  of Torts § 772); *David L. Aldridge Co. v. Microsoft Corp.*, 995 F. Supp. 728, 742 (S.D. Tex. 1998)
2  (granting summary judgment for intentional interference with contract claims as to true
3  statements). And Plaintiff's only case in support of such a theory is inapposite. *See Bus.*
4  *Integration Tech. v. MuleSoft Inc.*, No. C 11-04782 EDL, 2012 WL 13041534, at *3 (N.D. Cal.
5  Mar. 23, 2012). In *Business Integration Technology*, the court denied a motion to dismiss based
6  on allegations that defendants engaged in scheme of conduct to interfere with the contract between
7  the plaintiffs and a third party, including that defendants "engaged in a secret meeting with [the
8  third party], made disparaging comments about Plaintiff, abruptly severed its business relationship
9  with Plaintiff such that Plaintiff could not continue to provide services to [the third party], and
10 lured [the third party's] business away from Plaintiff to cause a breach of the contract between
11 Plaintiff and [the third party]." *Id.* The intentional interference claim was not premised solely on
12 "disparaging comments," and the question of truthfulness was not raised at all. *Id.* Still, as
13 explained above, Defendant has not identified, and the Court has not found, any authority
14 requiring that Plaintiff plead falsity as part of its intentional interference claim to survive a motion
15 to dismiss, which is all the Court needs to decide at this stage.

### B. Unfair Competition Law

California Business and Professions Code §§ 17200 *et seq.* encompasses California's unfair competition law ("UCL"). To bring an unfair competition claim, the plaintiff must have suffered an injury in fact and lost money or property as a result of the unfair competition. *See* Cal. Bus. & Prof. Code § 17204. Thus, "courts can issue orders only to prevent unfair competition practices and to restore to any person in interest any money or property which may have been acquired by means of such unfair competition." *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (Cal. 2010). The scope of this law is broad: rather than proscribe specific practices, "section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel–Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999).

To the extent Plaintiff's UCL claim is premised on the intentional interference claim, it

fails for the same reasons identified in Section III.A. above.[3]  Plaintiff also alleges "[o]n information and belief" that Defendant received confidential information about Matilock from Mr. Ezrine and has used this information without authorization to support his own business ventures, including sharing this with Plaintiff's competitors.  *See* FAC at ¶¶ 55–56.  Defendant points out that these conclusory allegations are insufficient on their own, and Plaintiff has failed to explain the specific facts on which its belief is based.  In response, Plaintiff states that it shared additional information with Defendant during the parties' meet and confer communications.  *See* Dkt. No. 23 at 17.  But those statements shared among counsel are not before the Court and are not included in the operative complaint.

### C.   Declaratory Judgment

Defendant next asks the Court to exercise its discretion to dismiss Plaintiff's claim for declaratory judgment regarding the $800,000 stipend payments that Defendant made to Matilock.  Plaintiff seeks a declaratory judgment that there is "no enforceable contract" between it and Defendant as to the $800,000 because they never reached any oral or written agreement, and indeed did not discuss that repayment was even necessary.  "The Declaratory Judgment Act does not grant litigants an absolute right to a legal determination" and "[t]he decision to grant declaratory relief is a matter of discretion."  *United States v. State of Wash.*, 759 F.2d 1353, 1356 (9th Cir. 1985) (quotations omitted).  The Ninth Circuit has explained that "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  *Id.* at 1357.  The Court declines to exercise its discretion at this early stage to dismiss Plaintiff's tagalong claim for declaratory judgment, but this assessment is subject to reconsideration if Plaintiff again fails to adequately plead any substantive cause of action.

---

[3] Defendant also suggests as a threshold issue that Plaintiff lacks standing to bring a UCL claim because Plaintiff is not seeking restitution and has not identified any future harm warranting an injunction.  The Court cautions Plaintiff that any amendment to its complaint should contain sufficient allegations to establish its standing to seek relief under the UCL.

### D. Punitive Damages

Lastly, Defendant argues that Plaintiff's request for punitive damages should be denied because Plaintiff has not alleged that Defendant engaged in fraudulent, malicious, or oppressive conduct. *See* FAC at ¶¶ 26, 51. Plaintiff acknowledges that its request for punitive damages is premised on its intentional interference claim. As detailed in Section III.A., the Court finds Plaintiff's intentional interference claim is deficient, and thus any request for damages on that basis similarly fails.

## IV. CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. At this early stage, the Court cannot say that amending the complaint would be futile. *See Lopez*, 203 F.3d at 1130. Plaintiff must therefore file any amended complaint within 28 days of the date of this order. The Court further **CONTINUES** the initial case management conference to July 21, 2020, at 2:00 p.m. The parties' shall submit their joint case management statement by July 14, 2020.

**IT IS SO ORDERED.**

Dated: 6/15/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge